Okay, good morning. Welcome to our last case. This is case number 19-10204, Constance Daniels v. Select Portfolio Servicing. And Ms. Steinkraus, did I pronounce it correctly? Yes, your honor. Okay, whenever you're ready. Good morning, your honors. May it please the court. I'm Kaylin Steinkraus on behalf of the appellant, Ms. Constance Daniels. Your honors, this appeal arises from the question of whether the mortgage billing statements attached to Ms. Daniels' complaint that misrepresent amounts owed and voluntarily represent that each is an attempt to collect a debt are indeed debt collection under the Fair Debt Collection Practices Act and its Florida state law counterpart, the Florida Consumer Collection Practices Act. And Ms. Daniels' claims must be permitted to proceed if she has stated a claim for relief, which she has. Before getting to legal argument today, I will highlight some of the key well-pled facts here that are significantly different than the other appeals where this court has considered questions similar to the question before it today. Here, each of the 11 mortgage billing statements misrepresent amounts owed. And those amounts are not wrong by a small amount, they're wrong by a lot. And this is not the first time that Select Portfolio has messed up with respect to Ms. Daniels' home mortgage loan. The last time they messed up, they pursued an improper foreclosure case against Ms. Daniels that lasted for five years. And Ms. Daniels prevailed in that five-year foreclosure. And the foreclosure court effectively sanctioned Select Portfolio as shown in Exhibit C to the complaint here. After that order was entered, every billing statement that Select Portfolio sent to Ms. Daniels continued to request untruthful amounts owed. Ms. Daniels notified Select Portfolio in writing of its misrepresentations as shown in Exhibit H and I to the complaint. But Select Portfolio ignored Ms. Daniels' notifications. And instead- Can I ask you a question, Ms. Stryker? Of those mortgage billing statements, which one of them or which ones of them are actionable and not barred by the statute of limitations? All the mortgage billing statements, with the exception of Exhibit D, which is from May of 2016, are actionable within the two-year statute of limitations under the Florida Consumer Collection Practices Act. And the ones within the one-year statute of limitations under the Fair Debt Collection Practices Act are in Exhibit G, Your Honor, which is a composite exhibit. But that would be then, from my calculations, for the federal, it would be 7-14-2007 would be only three. That's correct, Your Honor. And then for the Florida one, you're saying it would be from which exhibit? Starting at Exhibit E, Your Honor. So 10 of the 11 statements are actionable under the Florida law. All right, so let me ask you a question because part of, obviously, a violation of either of the acts is that it has to be a collection of a debt. So explain to me how the mortgage statements, I know that in the complaint, you guys called them letters of collection, but in fact, they're mortgage statements. So explain to me how a mortgage statement that is required by federal law, by Regulation Z of TILA, of the Truth in Lending Act, how that qualifies as a debt collection. The answer to your question, Your Honor, requires analysis of both the Fair Debt Collection Practices Act, relevant case law, and the Truth in Lending Act. So moving first to the Fair Debt Collection Practices Act, the plain language of the statute at 15 U.S.C. 1692A, subsection two, defines communication, and I quote, as the conveying of information regarding a debt directly or indirectly to any person through any medium. This language is interpreted broadly as is the Fair Debt Collection Practices Act in general. That means the 11 billing statements attached to Ms. Daniels' complaint are debt collection under the plain language of the statute as select portfolio conveyed information regarding a debt directly to Ms. Daniels via those collection letters. Beyond the plain language of the Fair Debt Collection Practices Act, we must also look to prior decisions of this court regarding the question of whether the- But the question really is the, obviously, as you know, the Truth in Lending Act, there is a requirement on service providers to provide to individuals a statement with detailed information, including everything here, because really, when you look at the statements in question, they really almost are identical to the model form that is provided for in Appendix H2, Part 1026. The model form that is provided for servicers to use. So what exactly, how exactly is that a collection of a debt? It doesn't demand that you pay, it's providing the information that is required under another federal statute. Everything in there is required by a federal statute. So, Your Honor, as explained in the brief, there is language, and that is beyond what is provided for in the CFPB H30B form. And that includes the representation that this is an attempt to collect a debt. All information will be used for that purpose. Additional payment instructions on second, third, fourth pages of a statement where the H30B form is only one page. There's additional payment coupon with a demand of an amount due by a due date, reinstatement options, but most importantly here, Your Honor, there are misrepresentations of amounts owed. And untruthful information is not required under the Truth in Lending Act. Further, the Truth in Lending Act does not preempt the Fair Debt Collection Practices Act. The two work together to protect the consumer as the former requires truthful disclosures in a simple standardized format, and the latter protects consumers from a litany of illegal debt collection practices. With respect to Ms. Daniel's home mortgage loan, the Truth in Lending Act does indeed recommend that mortgage servicers send truthful information, including truthful amounts owed, using that form Your Honor referenced. And the purpose of that form is to break down complex mortgage terms into easily digestible disclosures to the consumer. Here, however, Select Portfolio is trying to manipulate that helpful form to protect itself from Fair Debt Collection Practices Act litigation that arises from untruthful information in the mortgage billing statements at issue here. That does not make sense. And that does not make sense because the Truth in Lending Act is not meant to protect Select Portfolio. The Truth in Lending Act is meant to protect Ms. Daniel's from untruthful disclosures or confusing disclosures by Select Portfolio. Notably, Select Portfolio pointed out in its answering brief that the Truth in Lending Act only requires the amount due on a home mortgage to be accurate after acceleration of the mortgage has occurred at which point foreclosure is imminent. So while the Truth in Lending Act may not require that Select Portfolio send truthful amounts owed until a point where the mortgage is one step from foreclosure, the Fair Debt Collection Practices Act supplements the Truth in Lending Act and requires that each of Select Portfolio's representations of amounts owed or threats to foreclose are accurate and truthful. So the Truth in Lending Act form does not foreclose Fair Debt Collection Practices Act claims. The two statutes work together to protect the consumers at whichever point in delinquency the consumer's mortgage stands. And may I ask you a question? You keep referencing the language about foreclosure, but in the model form, it specifically says, because there's two model forms, the form that is a regular form where you're not delinquent, and then you have the form that has the delinquency box. And so the mortgage statements, not all of them, but most of them that Ms. Daniels received that are part of the exhibits attached to the second amending complaint include language in there, which is part of the model form that says, you are late on your mortgage payments and that's required by the statute by TILA, and that's in the model form. And it gives you what you need to do in order to bring your account back into not delinquency. And it also specifically says that failure to bring your current loan, your loan current may result in fees and foreclosure, the loss of your home. And that's in the model form. How is that a threat or in any way, shape or form in this representation? So here, Your Honor- I mean, are you disputing that she was delinquent? Correct. She was not delinquent at the time that these statements were sent with respect to the correct amounts that were paid during this time period. So while she was delinquent pursuant to select portfolios records, which could land her into a second improper foreclosure, the issue here is that she should not have been delinquent. The misrepresentations of the amounts owed, for example, if we look to exhibit E to the complaint. This is the November 14th, 2016 mortgage billing statement. And here it says total amount due $9,075.71. Your Honors, four to five months before this was entered, the foreclosure court had sanctioned select portfolio and set forth the payments that Ms. Daniels was obligated to pay. You can see here that Ms. Daniels had made a payment where it states under... The numbers are all over the place, to be honest, Your Honor. All right, but my looking at the record is, there were a few where she did not have that delinquency notice. Like the December, 2016, the January, 2017 didn't have a delinquency notice. The November one had one, the 2015 one had one. So not every single, the one of in March of 2017, that didn't have one. I think maybe there was only two that actually had the delinquency box. That's correct, Your Honor. And in and of itself, that is showing that select portfolio is misrepresenting Ms. Daniels' delinquency. There's no way she could be delinquent. Well, I don't know, but these are the exhibits that you've attached. So the question I have is, on the other exhibits where there shows no delinquency, what is a misrepresentation then? The misrepresentation is the deferred principal balance on each and every mortgage billing statement. And that is alleged as $83,259.82. The complaint alleges in detail, Your Honor, that that amount should actually have only been, that amount is $22,451.74 higher than it should have been. And that's alleged in the complaint at paragraphs 48, 61B, 72A, and shown in exhibit D, E, F, and composite exhibit G. This case is at the 12B6 stage, which means that the complaint allegations and attachments are to be taken as true. Here, select portfolio and the below court do not dispute that there are material misrepresentations of amounts owed here. The only question before the court is whether the technical requirements of the statute are met. And they are when each and every statement includes misrepresentations of amounts owed and language in excess of the Truth in Lending Act. Further, if the court were to take select portfolios argument as true, there would be the same policy concern that this court considered in the Reese case. And that would be that the Fair Debt Collection Practices Act would only apply to unsecured debts. And that is not consistent with the intent of the statute. And if your honors have no further questions. You've gone over your time and we've taken you there. So we'll have your three minutes of rebuttal available for you. Thank you, your honor. All right, thank you very much. Mr. Brown. Yes, good morning and may it please the court. My name is Benjamin Brown and I represent the Appellee Select Portfolio Servicing, Inc. As you heard during Appellant's presentation, this matter involves a loan accounting dispute. Appellant takes issue with the accuracy of some numbers that are contained in a standard monthly mortgage statement form that is required by the Truth in Lending Act and which complies with the content of the model form. Well, let's start with the language of the Federal Act, Mr. Brown. The relevant provision, which is 1692 little a sub two doesn't talk about a debt collection notice, right? It says that a communication is quote, the conveying of information regarding a debt directly or indirectly to any person through any medium. And we've said that this definition is very broad. So why isn't your mortgage statement a communication under the FDCPA? Well, just as this court recently held in green versus specialized loan servicing, which is contained within our response brief, it would be improper to hold a loan service or liable under the FDCPA for sending what this court has determined to be garden variety monthly mortgage statements that are mandated by the Truth in Lending Act and which comply with the language and form of the CFPB model form. Well, that's a policy argument, but let's start with the statutory language first, and then we can move on to policy and harmonizing the FDCPA with TILA. Is a mortgage statement, the conveying of information regarding a debt? Well, I don't think that it is. At most it identifies the amounts due, but it's different from the demand that the appellant claims. And of course, because it's required by the Truth in Lending Act, this court in green and numerous other courts have held that because the certain content and language is required to be given by federal statute, that it does not fall within that definition of the Fair Debt Collection Practices Act and therefore does not satisfy that first element of the FDC. But TILA doesn't authorize a provider to send out mortgage statements that are incorrect about the amounts due, right? That's not required by TILA? Well, and of course, I think it's somewhat of a trick question, but in reading green, the standard- No, it's not a trick question. I mean, TILA requires a servicer to use a form and no one, at least for my part, I'm not suggesting that every time you send out a mortgage statement, it's actionable under the FDCPA. But if you're sending out an allegedly incorrect mortgage statement with $60,000 more than is owed, and you say on the form that this is an attempt to collect the debt, why isn't that actionable under the FDCPA? And the reason is because of green and the way that it construes what the applicable standard should be when a loan servicer complies with TILA and sends out a statement. In green, the standard is whether or not the language of the statement sufficiently or substantially complies with the language requirements that are in the Truth in Lending Act and the model form. And that's exactly what we have here. There's no- Regardless of how you fill in the blanks? Well, and that's, of course, what the appellant is taking issue with is the accuracy of latent information that is included in there. And that's not what green says. In reading the holding in green, or excuse me, one of the specific or important provisions of green is we find nothing in the language in question from the mortgage statement beyond what is required by TILA, which rises to the level of being unlawful debt collection language. And that's in Roman numeral 3B under the mortgage statements is debt collection section. And then further, the last paragraph, excuse me, the last sentence of that section, the concluding sentence provides that the facts of Kelleher, however, are distinguishable from the case here. The language, green cites from his one mortgage statement, lacks the strong demands for payment used by debt collectors in cases like Kelleher. And from our perspective- I'm sorry, Counselor. Do you agree, though, that if the mortgage statement included language that was harassing or that was not included either in the TILA statute or in the model form, that then it would go outside and then perhaps become part of a debt collection letter? Yes, and if I understand your question, it's because you used the word language. And I think that's what green says is the standard, is if the language, that is the verbiage, it sufficiently complies with TILA and the model form to keep the form within the protections of TILA and therefore having it not qualify as debt collection activity. And to answer your question- Can I ask you another question? Because I'm just trying to sort of understand sort of the way the statute works of treason lending, because I know there's a lot of different components of it. From my understanding, though, part of the, there is language. I know on the second page, there's additional language, but I think that's part of the truth in lending statute, which is that you have to give the person who you're sending the mortgage statement to the opportunity or a place where they can say if there's an error, they need to know how to contact you or how to send you some information so that you can correct the error. Yes. I mean, that's required by the TILA statute, correct? I believe so, yes. And I know that SPS's statement does include information about requests for information or a notice of error under RESPA. And quite frankly, that is an appropriate tool prescribed by federal law in order for a person to explore and investigate an accounting dispute, which this is. And- Let me ask you a question. Because obviously, this is a motion to dismiss stage, and we have to take all the allegations as true. From my understanding of the second amending complaint, the letter that was sent, I'm not sure if it was one or two, I can't remember now. Those were done well after those mortgage statements were sent. There wasn't a letter that was sent for each mortgage statement saying, please correct this error, correct? And what those two demand letters are, in looking at them, those were sent between October and December of 2017. And this was approximately one year. So they were sent close to the filing of the complaint? The answer is yes. Within six months, but about two years after that initial court order was entered, which found that that loan modification agreement was in fact applicable to the subject loan. And it's also worth noting that those demand letters, or excuse me, that the letters sent by Borrowers Council, those were not any sort of genuine attempts to explore a loan accounting. They weren't sent under RESPA. Rather, they were sent in effort to trick the servicer into waiving the deferred balance, which the court ordered. And both of the letters say that. And from our perspective, our mortgage statements provide the borrower opportunities to contact the servicer if there is a question about the loan accounting. That's what the request for information is. That's what a notice of error is for. That's why federal law prescribes these procedures under RESPA. And from a policy perspective too, it doesn't want borrowers at the first instance to be filing a lawsuit accusing a servicer of improper action. Rather, there's a separate federal law for exploring these alleged accounting discrepancies. And there's also- Now, Mr. Brown, at this stage, am I correct that you do not and cannot dispute that the mortgage statements were substantively incorrect? At this point, at the 12B6 stage, we understand that the appellant's pleading is assumed to be true. So from a procedural perspective, we can't really dispute those figures. Of course, substantively we do, but we haven't articulated those issues because it's not necessarily appropriate at the 12B6 stage. So the question is whether or not a monthly mortgage statement on a form generally like TILA requires that has incorrect mortgage due information is a communication under the FDCPA. That's the issue, right? Yes, and from our perspective, Green answers that question and sets forth the standard that as long as a loan servicer complies with the language requirements of TILA and the model form, which there's no question that we did. And at every instance, and we detail this in the brief as well, about the alleged discrepancies in language, none of those are meaningful in any way. And with this really- Could you address specifically the one where it says this is an attempt to collect a debt? Because I read the cases that you cite that suggest even though a letter says that is an attempt to collect debt, that is not. And I'm curious about your response to- Yes, well, first of all, the FDCPA does require that the language we included on there is included in the initial monthly mortgage statement or the initial communication with the debtor. So there's no question if it was included in the initial monthly mortgage statement that it would not be actionable. And the fact that that language may have been carried forward into the future, we've cited several different cases from other circuits, which have specifically held that language or the labels that this is debt collection correspondence is legally irrelevant. And we've cited cases from the sixth, seventh, and 10th circuits on that point. So from our perspective, the case law bears out that the mere inclusion of that language, which is specifically required by the FDCPA at a certain point in time, although it may not be required at a later time, consistent with the sixth  that it's not actionable. And also that that language does not change or modify these garden variety mortgage statements in any meaningful way so as to take them outside of the protections that apply to TILA mandated monthly mortgage statements. Let me ask one more kind of question about the district court. So it seemed to me that the district court said that a statement like this could never be a debt collection activity. So it could never be subject to an FDCPA lawsuit. And it seems like you are suggesting that we adopt your rule, the rule that the unpublished case in green adopts that under certain circumstances, a TILA statement could be if it goes beyond what's required. Should we just, if we agree that green is the right rule and we adopt that as a published opinion, should we just send the case back down to the district court to apply that rule and this is the one to apply? Well, and I think that green has it right. And I think that all, and I think that green has it right. And insofar that the language of TILA and the language of the model form really govern the situation. And I think that green even anticipates that there are possible ways in which additional language could be grafted onto the model form such to take the monthly mortgage statement outside of the protections of TILA. And there's a number of ways in which this could be done. For instance, if a loan servicer copied and pasted a demand letter into the monthly mortgage statement, or if a law firm took the monthly mortgage statement and stapled it to a demand letter, there's a lot of different ways in which the monthly mortgage statement could be taken outside of the protections. But again, according to green and the standard that's in green, is if the language does not venture outside that garden variety language of TILA and the standard form, then it is protected. Mr. Brown, may I ask you a question before your time totally expires? Do you agree or disagree with your opposing counsel's position regarding the statute of limitations? We certainly agree that the May 13th, 2006 statement is off the table for the FDCPA and the FCCPA. In terms of some of the other statements, I would have to double check my math, but- But you would agree that anything in 2017, the 7-14-2017, 8-15-2017, and 9-16-2017 would be outside the FDCPA. That would be outside the one year. Yes, anything before, I guess it would be June 14th, 2017. Okay. Okay, Mr. Brown, you can wrap up if you would like. Yes. So, we believe this court should continue to follow green by holding that routine monthly mortgage statements such as the ones that issued do not constitute unlawful debt collection activity. Statements required to be sent by federal law, Truth in Lending Act, and therefore complying with such law should not automatically trigger liability under a separate federal law designed to address unlawful debt collection practices. We believe the lower court carefully analyzed SPS's mortgage statements and correctly found that they are consistent with TLA and the CFPB model form. Accordingly, we believe that the order of dismissal should be affirmed. All right, thank you very much. Ms. Steinkraut, you have your three minutes of rebuttal. Thank you, Your Honor. Appellant agrees that green has it right, but this case is not green for three reasons. First, green's single mortgage statement did not misrepresent amounts owed. Second, green's single mortgage statement did not represent that it was an attempt to collect a debt. And third, the language in question in green was limited to one important messages box in the single mortgage statement that did not misrepresent amounts owed. Second, the dual purpose doctrine that this court recognized in Reese is that a document can be sent for informational purposes, for example, to comply with the truth in lending requirements, but it can still violate the Fair Debt Collection Practices Act by including material misrepresentations of amounts owed. Further, as addressed by Judge Lagoa, Truth in Lending Act does provide for information regarding the correction of an error. Ms. Daniels did not send or demand letters to select portfolio regarding the errors. She sent two letters that in essence requested a line-by-line accounting of the balances owed. And that first letter was sent eight months before this lawsuit was filed. Select portfolio had the opportunity to respond with the correct accounting numbers, but they didn't respond with anything at all. They ignored both letters and they did not provide the correct accounting figures because they could not. Finally, the public policy concerns here cannot be ignored because as I stated in my affirmative argument, if the court is to adopt select portfolio's position is true, the natural consequence is that the Fair Debt Collection Practices Act would only apply to unsecured debts. That's because the only written communications a mortgage servicer sends to a consumer in connection with the collection of their mortgage debt is the monthly mortgage billing statement. And your honors, I have been working in this field for a little while, and I can let you know that mortgage servicers do not staple demand letters to mortgage billing statements. So select portfolio is stating that it can put material misrepresentations into a form that looks like a truth in lending form, and then say that they are not liable for those misrepresentations. May I interrupt you for a second? I just wanna confirm. The only thing that's referenced in the letter from counsel is the line by line breakdown of the deferred balance. Is that then the position in the second amended complaint that the only misrepresentation is the deferred balance breakdown, that that's the only thing referenced in the letter? No, your honor. The deferred balance misrepresentation is alleged, but so is the inflated interest only payment in the November of 2016 statement and as well as, then there are some of the statements also show the misrepresentation. I'm going back. I'm just going to the letters that were sent. There's two letters that were sent to SPS, and both of them only reference a breakdown of the deferred balance. So how is SPS to know? These are exhibits to your complaint, which we take as true. How are they to know that there are any other errors other than what's alleged in those letters? Your honor, they should have responded with respect to the line by line accounting of the deferred balance, but you're correct. The letters did not notify them of the other misrepresentations alleged in the complaint, but those misrepresentations are still alleged and Ms. Daniels was not required to notify Select Portfolio of all these errors. Select Portfolio should have fixed it. But isn't, doesn't the federal law require, RESPA doesn't it require that that's why they give you the information. If there's an error, then you're supposed to contact the service provider to let them know there's an error so they can correct it. No, your honor. The, there is no condition precedent to a Fair Debt Collection Practices Act that would require compliance with RESPA to send a written notice to the mortgage servicer in order to be able to bring a Fair Debt Collection Practices Act claim, your honor. Thank you. And if there are no further questions, yes, your honor. No, no, go ahead and finish up. Thank you. If there's no further questions at this time, we request reversal of the below court order and reinstatement of the complaint. Thank you. All right, thank you both very much. We really appreciate it. Thank you. Okay, court is in recess for today and we will start up tomorrow morning.